ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EX. AGENTE MIGUEL FELICIANO GOTAY #27989<br><br>RECURRIDO<br><br>v.<br><br>POLICÍA DE PUERTO RICO<br><br>RECURRENTE | KLRA202300278 | Revisión administrativa procedente de la Comisión de Investigación, Procesamiento y Apelación<br><br>Caso Núm.: 20P-60<br><br>Sobre: Expulsión |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Rivera Marchand y la Jueza Aldebol Mora

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

Comparece el Negociado de la Policía de Puerto Rico (Negociado) y solicita la revisión de una *Resolución*[1] que emitió la Comisión de Investigación, Procesamiento y Apelaciones (CIPA) el 26 de mayo de 2022, notificada el 26 de enero de 2023. En ella, la CIPA revocó la expulsión impuesta al Ex Agente Miguel A. Feliciano Gotay (Feliciano Gotay o recurrido) y ordenó el pago de los salarios y haberes dejados de percibir durante el tiempo en que este permaneció expulsado de sus funciones.

Por los fundamentos que exponemos a continuación, procede revocar el dictamen recurrido. Veamos.

**I.**

Feliciano Gotay ocupó el puesto de agente de la Policía de Puerto Rico y, a la fecha de los hechos, estaba asignado al Precinto 266 de Santurce, área de San Juan. Conforme surge del expediente, se presentó una *Denuncia*[2] en contra de Feliciano Gotay el 25 de octubre de 2018, por violación al Artículo 184 del Código Penal de

---

[1] Apéndice, págs. 35-40.
[2] Apéndice, pág. 12.

Puerto Rico (hurto de mercancía en establecimientos comerciales), 33 LPRA sec. 5254. Según la relación de hechos, se alegó que Feliciano Gotay, allá para el 19 de octubre de 2018 a las 10:05 a.m., en Caguas, Puerto Rico, se apropió de cuatro (4) carritos de juguetes y de una película DVD de *Barbie*, propiedad de la Tienda Walmart Super Center de Caguas, sin pagar el valor de la mercancía equivalente a $80.83, más el impuesto sobre ventas y uso (IVU). Celebrada la vista al amparo de la Regla 6 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 6, el foro primario determinó causa probable para arresto y señaló el juicio para el 15 de noviembre de 2018.[3]

Pendiente lo anterior, el 3 de diciembre de 2018, el Negociado notificó a Figueroa Gotay una carta de suspensión sumaria de empleo y resolución de cargos. El 22 de enero de 2019, culminado el proceso de rigor, el TPI dictó una *Sentencia Archivo y Sobreseimiento del Caso*[4] al amparo de la Regla 246 de Procedimiento Criminal, 34 LPRA Ap. II, R. 246. Meses después, el Negociado, representado por el Comisionado, Henry Escalera Rivera, notificó a Feliciano Gotay su expulsión del puesto que ocupaba.[5]

Inconforme, el recurrido instó una *Apelación* ante la CIPA[6]. Notificada la misma, dicha Comisión ordenó la paralización de los procesos, por virtud de la ley *Puerto Rico Oversight, Management, and Economic Stability Act* (Ley PROMESA).[7] Con posterioridad, la CIPA dejó sin efecto la paralización y señaló una vista administrativa, la cual finalmente se celebró el 14 de octubre de 2021.[8] En ella, Feliciano Gotay ofreció como evidencia documental una copia del dictamen del Tribunal de Primera Instancia que ordenó el archivo de los cargos criminales en su contra. Mientras que, el Negociado presentó los testimonios de la Agente Olga M.

---

[3] Apéndice, pág. 12.
[4] Apéndice, pág. 17.
[5] Apéndice, págs. 3-4.
[6] Apéndice, págs. 1-2.
[7] Apéndice, pág. 6.
[8] Apéndice, págs. 9-10.

Rodríguez Rosado (agente Rodríguez Rosado) y del Sargento Joel Cruz Lebrón, ambos de la División de Asuntos Internos del Negociado, dedicada a investigar casos de la uniformada que envuelven corrupción y actos delictivos. Como prueba documental, el Negociado presentó el *Subpoena* del Departamento de Justicia dirigido a la tienda Walmart de Caguas, una copia de la *Denuncia* y una copia del *Informe de Incidente* de la Policía de Puerto Rico.

Cabe indicar que, ante la falta de citación y comparecencia del tercer testigo del Negociado, David Alicea Avilés (Alicea Avilés), representante de la empresa Walmart, la continuación de la vista administrativa se fijó para el 28 de abril de 2022.[9] Llegado el día, el Negociado solicitó nuevamente la suspensión de los procesos debido a la ausencia de Alicea Avilés, a pesar de haber sido citado. Evaluado lo anterior, la CIPA denegó el petitorio. En su consecuencia, Feliciano Gotay solicitó a la CIPA que declare con lugar la apelación instada ante sí.[10]

En respuesta, el 9 de mayo de 2022, el Negociado presentó una *Moción en Solicitud de Desestimación y/o Resolución Sumaria.*[11] En esta expuso que, el recurrido acordó con el Ministerio Público restituir el valor de los bienes pertenecientes a Walmart y, una vez consignados,[12] el Tribunal de Primera Instancia decretó el archivo del cargo de hurto de mercancía en establecimientos comerciales presentado en su contra. Añadió que, Figueroa Gotay no negó los hechos, ni impugnó la evidencia testifical y documental que presentó el Negociado. Al igual discutió que, el acuerdo que dio lugar al archivo del procedimiento criminal en contra de Figueroa Gotay no constituye un manto de inmunidad que impida al Negociado disciplinar al recurrido al amparo del Reglamento Núm. 9001, *Reglamento para enmendar el Artículo 14 del Reglamento de Personal*

---

[9] Apéndice, pág. 18.
[10] Apéndice, págs. 1-2 y 30-32.
[11] Apéndice, págs. 19-29
[12] Apéndice, págs. 28-29.

*de la Policía de Puerto Rico,* de 29 de agosto de 2017 (Reglamento Núm. 9001).

Allí también el Negociado discutió que, la agente Rodríguez Rosado estableció con su testimonio las faltas imputadas. En primer lugar, y con respecto a la falta grave número 27 (apropiarse ilegalmente de bienes pertenecientes a otras personas o aquellos que le hayan sido confiados en el curso de sus funciones), el Negociado puntualizó que esta falta quedó evidenciada cuando Feliciano Gotay consignó a favor de Walmart el pago por el valor de los bienes hurtados. Para evidenciar lo anterior, anejó la *Moción de consignación* y el *Recibo oficial #15823* los cuales incluyó como Identificación I.

A lo antes, el Negociado añadió que, el apelante incurrió en la falta grave número 18 (desacatar y desobedecer órdenes legales o realizar actos de insubordinación o indisciplina) al no portar su arma de reglamento al momento de los hechos, a pesar de que los agentes del orden público están obligados a portarla en todo momento, conforme a la reglamentación aplicable.

Por último, según el Negociado, se configuraron las faltas números 29 (incurrir en conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía de Puerto Rico) y 31 (incurrir en conducta que constituya delito grave o menos grave que implique depravación moral), cuando Feliciano Gotay se apropió de los bienes de Walmart que originaron la denuncia en su contra por violación al Artículo 184 del Código Penal, *supra.*[13]

Basado en lo anterior, el Negociado sostuvo que, los hechos imputados objeto de transacción son suficientes para justificar las faltas reportadas y la expulsión como medida disciplinaria impuesta por la autoridad nominadora. Expuso además que, le resulta incongruente que una persona sea miembro de la Policía de Puerto Rico y se dedique a asumir una postura que denigra la imagen de la

---

[13] Apéndice, pág. 21.

agencia, la cual viene obligada a establecer la ley y el orden. Invocó el Reglamento Núm. 7952 del Departamento de Estado, Reglamento para la Presentación, Investigación y Adjudicación de Querellas y Apelaciones ante la Comisión de Investigación, Procesamiento y Apelación de 1 de diciembre de 2010 (Reglamento Núm. 7952) para que disponga de la apelación incoada por la vía sumaria.

Por su parte, Feliciano Gotay presentó una *Moción para que se declare con lugar la apelación*.[14] En ella, argumentó que el Negociado no probó las faltas que se le imputan por lo cual imploró su reinstalación en la agencia. Poco después, Feliciano Gotay instó una *Moción en oposición a desfilar prueba luego de someter el caso y en violación al debido proceso de ley*.[15] Impugnó la admisibilidad de la *Moción de consignación* y del *Recibo oficial #15823* que anejó el Negociado en su petitorio de desestimación bajo el fundamento de que estos fueron presentados luego del caso haber sido sometido.

En atención a lo anterior, el 14 de octubre de 2022, la CIPA celebró la vista en sus méritos, la cual continuó el 28 de abril de 2022. Evaluada la prueba,[16] la CIPA emitió la *Resolución* final en la cual consignó las siguientes 12 determinaciones de hechos:

1. El Sr. Miguel Feliciano Gotay se desempeñaba para la fecha que ocurren los hechos que provocan la Apelación en el caso de epígrafe como agente del Negociado de la Policía de Puerto Rico. Su número de placa era 27989.
2. El 19 de octubre de 2018 Olga Rodríguez Rosado y el Sargento Joel Cruz Lebrón se personaron a la tienda Walmart Super Center de Caguas a diligenciar un subpoena en relación con una investigación que se realizaba en contra del apelante.
3. Una vez en los predios de la tienda, los referidos agentes se percataron de que el vehículo del apelante estaba en el estacionamiento de la tienda.
4. Los agentes Rodríguez Rosado y Cruz entraron a la tienda Walmart y se dirigieron al área de seguridad. Allí solicitaron al personal de dicha área que localizara a través de sus cámaras de vigilancia al apelante. Una vez localizado, el agente Rodríguez Rosado le estuvo vigilando hasta que el apelante llegó al área de la caja registradora.
5. El apelante realizó un pago y al salir del establecimiento fue detenido por personal de Walmart por alegadamente no haber pagado por la totalidad de los bienes adquiridos.

---

[14] Apéndice, págs. 30-32.
[15] Apéndice, págs. 33-34.
[16] Detallamos que, la prueba del Negociado consistió en los testimonios de la agente Olga M. Rodríguez Rosado y del Sargento Joel Cruz Lebrón; copia del *Subpoena* del Departamento de Justicia dirigido a la tienda Walmart de Caguas; copia de la *Denuncia*; y copia del *Informe de Incidente* de la Policía de Puerto Rico. Por su parte, Feliciano Gotay presentó como prueba una copia de la *Sentencia Archivo y Sobreseimiento del Caso*.

6. Los bienes muebles supuestamente apropiados ilegalmente por el apelante fueron valorados en la suma de $80.83.
7. Por los hechos ocurridos, el 19 de octubre de 2018 se presentó contra el apelante un cargo por violación al artículo 184 del Código Penal de Puerto Rico (hurto de mercancía en establecimientos comerciales).
8. El 25 de octubre de 2018, se determinó causa para juicio, quedando el mismo señalado para el 15 de noviembre de 2018.
9. El 22 de enero de 2019, el Tribunal de Primera Instancia, Sala de Caguas, emitió sentencia de archivo y sobreseimiento del caso.
10. El 30 de octubre de 2018 y recibido por el apelante el 3 de diciembre de 2018, el Negociado de la Policía de Puerto Rico le comunicó al apelante la suspensión sumaria de empleo y sueldo con la intención, además, de expulsarle de dicho cuerpo.
11. Celebrada la vista administrativa informal, el 17 de septiembre de 2019 le fue notificada Resolución Final determinando su expulsión de la Policía de Puerto Rico. Se le imputó en la referida resolución violaciones a[l] Artículo 14, Sección 14.6.1, las faltas graves número 18, 27, 29 y 31.
12. La prueba aportada por la apelada para sostener la validez de la expulsión no ha colocado a esta Comisión en posición de determinar que el apelante haya incurrido en las faltas que le fueron imputadas y que provocaron su expulsión. (Notas omitidas.)

Basado en lo anterior, y bajo el entendimiento de que los testigos del Negociado no pudieron precisar de cuáles artículos Feliciano Gotay presuntamente se apropió ilegalmente y su valor, la CIPA declaró ha lugar la apelación y revocó la medida disciplinaria impuesta en contra del recurrido. En síntesis, determinó que, a pesar de las oportunidades brindadas para presentar evidencia documental y testifical para sostener la sanción de expulsión, el Negociado no lo hizo. En ausencia del *quantum* de la prueba requerido, procedió a revocar la expulsión y a ordenar el pago de salarios y haberes dejados de percibir durante el término que Feliciano Gotay estuvo expulsado, lo cual se extiende desde la suspensión sumaria hasta la resolución.

Insatisfecho, el Negociado solicitó reconsideración.[17] En apretada síntesis, arguyó que Feliciano Gotay no refutó la prueba presentada y no se opuso a la solicitud de resolución sumaria. Sostuvo que la CIPA no consideró el expediente investigativo presentado, el cual sostiene las faltas imputadas. Clarificó que, la nota al calce sobre la falta de detalles sobre la mercancía hurtada

---

[17] Apéndice, págs. 43-45.

en los testimonios admitidos es impertinente e inmaterial a las faltas imputadas, toda vez que, el acto de indisciplina, apropiación, resulta en conducta lesiva, inmoral y desordenada en detrimento de la Policía de Puerto Rico. Citó como fundamento lo resuelto en *San Vicente v. Policía de P.R.,* 142 DPR 1 (1996), *Mundo Hance v. Tribunal Superior,* 101 DPR 302 (1973) y *Tribunal Examinador de Médicos v. Dr. Cañas Rivas,* 154 DPR 29 (2001).

Por su parte, en su oposición al petitorio de reconsideración, Feliciano Gotay enfatizó que, la vista ante la CIPA es una de carácter *de novo,* por lo que no se puede descansar en el expediente del Negociado. Arguyó que, no se probaron ninguna de las faltas imputadas.[18] Concluyó que, como cuestión de derecho, no procede la reconsideración. Atendido lo anterior, la CIPA declaró no ha lugar a la solicitud de reconsideración.[19]

Aun inconforme, el Negociado comparece ante esta Curia y le imputa a la agencia recurrida la comisión de los siguientes errores:

> Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al declarar "Ha Lugar" la Apelación presentada por el Ex Agte. Miguel A. Feliciano Gotay basada en que la prueba presentada por el Negociado de la Policía no demostró la comisión de las faltas imputadas a este que justifican la medida disciplinaria impuesta por el Comisionado del Negociado de la Policía, y al no tomar conocimiento oficial de los documentos sometidos posterior a la vista administrativa.

> Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al, como parte del remedio concedido a la parte recurrida, ordenar el pago de salarios y haberes dejados de percibir comprendidos desde la Suspensión Sumaria hasta la Resolución Final de expulsión del Ex Agte. Feliciano Gotay, y al no disponer que el remedio del pago de salarios y haberes dejados de percibir quedaba sujeto a la norma establecida en *Hernández Badillo v. Municipio de Aguadilla,* 154 DPR 199 (2001).

Luego de varias incidencias y prórrogas permitidas, el Negociado presentó la transcripción de la prueba oral y un alegato suplementario. Por su parte, el Feliciano Gotay acreditó su alegato en oposición el 16 de octubre de 2023. Con el beneficio de lo anterior, procedemos a resolver.

---

[18] Apéndice, pág. 49.
[19] Apéndice, pág. 51.

**II.**

**A. Revisión de Decisiones Administrativas**

Sabido es que el derecho a cuestionar una determinación emitida por una agencia administrativa mediante la revisión judicial es parte del debido proceso de ley. *ACT v. PROSOL et als.*, 210 DPR 897 (2022). La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. *OEG v. Martínez Giraud*, 210 DPR 79 (2022). Al revisar una determinación de un organismo administrativo, el criterio rector es la razonabilidad de la actuación de la agencia. *Íd.*

Cabe señalar que, salvo que el ente administrativo haya actuado de manera arbitraria, ilegal o irrazonable, la resolución administrativa debe sostenerse. *Íd.* Sobre este tema, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". *Hernández Feliciano v. Municipio de Quebradillas*, 2023 TSPR 6, resuelto el 20 de enero de 2023. Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por ello, el Tribunal Supremo de Puerto Rico ha resuelto con igual firmeza que los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o, simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Martínez v. Supte.*

*Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.*, págs. 36-37, citando a *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Jta. Planificación et al.,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Torres Rivera v. Policía de PR,* supra, pág. 628.

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Vélez v. A.R.Pe.,* 167 DPR 684 (2006). Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004). De no identificarse y demostrarse otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98 (2003).

### 1. Medidas disciplinarias/expulsión

El Reglamento Núm. 9001, *supra*, se aprobó para enmendar el Artículo 14 del Reglamento Núm. 4216 y atemperar el andamiaje disciplinario a la Ley Núm. 53-1996, Ley de la Policía de Puerto Rico de 1996, y demás legislación aplicable. Surge de la Sección 14.6 del referido reglamento, la autoridad del Superintendente de la Policía de Puerto Rico de imponer las acciones disciplinarias necesarias a aquellos miembros de la Policía de Puerto Rico que violenten las normas, reglamentos, órdenes o procedimientos establecidos.

En lo pertinente a las faltas graves imputadas, la Subsección 14.6.1 del Reglamento Núm. 9001 define:

18. Destacar y desobedecer órdenes legales comunicadas en forma verbal o escrita por cualquier superior o funcionario de la Policía de Puerto Rico con autoridad para ello, o realizar actos de insubordinación o indisciplina. Para efectos de esta falta se entenderá como superior aquel de mayor rango o por la posición designada.

27. Apropiarse ilegalmente de bienes pertenecientes a otras personas o aquellos que le hayan sido confiados en el curso de sus funciones.

29. Incurrir en una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.

31. Incurrir en conducta que constituya delito grave o menos grave que implique depravación moral. Para efectos de esta falta no es necesario la radicación y el progreso de cargos criminales, solo basta que la investigación administrativa refleje que el querellado incurrió en una conducta tipificada, como delito grave o menos grave que implique depravación moral.

Puntualizamos que, ante una primera sanción, las faltas números 18 y 29 acarrean una suspensión de 40 días, mientras que las faltas números 27 y 31 conllevan la expulsión del empleo.

### 2. Quantum de prueba

En *OEG v. Martínez Giraud*, supra, el Tribunal Supremo expresó que, en el ámbito administrativo, el *quantum* de prueba necesario para prevalecer es el de preponderancia de la prueba. Allí, también, nuestro más Alto Foro aclaró que, en un procedimiento administrativo en el cual está en riesgo un derecho fundamental, como lo sería la privación de un empleo, el estándar aplicable es el

de prueba clara, robusta y convincente. *Íd.* Este *quantum* de prueba intermedio ha sido definido como "aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables." *Íd.*, pág. 94.

**B. Apreciación de prueba**

El Tribunal Supremo de Puerto Rico estableció que "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013).

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical. *Pueblo v. Hernández Doble,* 210 DPR 850, 864-865 (2022); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Sin embargo, esta regla cede si se demuestra que, el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Ortiz Ortiz v. Medtronic,* supra.

Como se sabe, es doctrina reiterada por el Tribunal Supremo de Puerto Rico que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Arlequín Vélez,* 204 DPR 117, 147 (2020). A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres,* 117 DPR 645 (1986). De conformidad, y en la medida

en que el juzgador de los hechos está en mejor posición para aquilatar la prueba testifical, al intervenir con la apreciación del foro de instancia es indispensable que la parte que cuestione la apreciación de la prueba presente y reproduzca la transcripción de la prueba oral. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

### C. CIPA

La Ley Núm. 32 de 22 de mayo de 1972, 1 LPRA sec. 171 *et seq.*, creó la CIPA, a quien otorgó poderes cuasi-judiciales para intervenir en asuntos sobre el abuso o mal uso de la autoridad de cualquier funcionario del poder ejecutivo, entre ellos, los agentes del orden público. *Torres Rivera v. Policía de PR*, 196 DPR 606, 620 (2016). En lo pertinente, el Artículo 2 faculta a la CIPA a revisar las actuaciones disciplinarias de los directores o jefes de las agencias cubiertas por la referida ley. *Íd.* Consistente con lo anterior, el Artículo 10(5) del Reglamento Núm. 7952 autoriza a la CIPA a celebrar una vista *de novo* para escuchar toda la prueba que desfiló ante el organismo administrativo y para dictar sus propias determinaciones de hecho o conclusiones de derecho. De otra parte, el Artículo 26 del citado reglamento faculta a dicho organismo a disponer sumariamente de una querella o apelación cuando de los hechos no surge que se justifique la concesión de un remedio. *Íd.*

### III.

A modo de sintetizar, en el presente caso, el Negociado argumenta que la CIPA incidió al resolver que dicha parte incumplió con el estándar de prueba clara, robusta y convincente para justificar la expulsión de Feliciano Gotay. A lo antes añade que, la CIPA erró al ordenar el pago de los salarios y haberes dejados de percibir desde la suspensión sumaria hasta la resolución.

De otra parte, Feliciano Gotay aduce que los testigos del Negociado presuntamente no tenían propio y personal conocimiento de los hechos. Arguye que, el Negociado no probó la falta número 27

ante la ausencia del testimonio del representante de Walmart, quien presuntamente era esencial para establecer que los bienes que surgen de la denuncia le pertenecían a dicha entidad. Niega que el delito menos grave -que fue objeto de archivo- implique depravación moral, por lo cual, aduce que no se configuró la falta número 31. Además, insiste en que el Negociado tampoco probó las faltas número 18 y 29 las cuales, de entenderse evidenciadas, no conllevan la expulsión del empleo.

Un examen del expediente y de la transcripción de la vista administrativa nos obliga a concluir que, la determinación impugnada se aparta de lo que debe ser una adjudicación razonable, justa y cónsona con la misión del Departamento de Seguridad Pública del cual Feliciano Gotay era entonces miembro,[20] a saber: "proteger, investigar y/o prevenir actividades delictivas" y salvaguardar la seguridad pública.[21]

Detallamos que, con respecto a la falta número 18, surge de la transcripción de la vista administrativa que la agente Rodríguez Rosado declaró lo siguiente, a preguntas sobre lo que ella vio el día de los hechos:

> [...] Él pasó a la caja, pagó una mercancía, otra no. Luego sale de la caja, se dirige afuera. Ahí pues Walmart tiene un protocolo establecido ya, donde ellos intervienen con la persona cuando está afuera, entonces ahí lo traen a un cuarto donde hacen las entrevistas y demás dentro de la tienda. Entonces seguridad lo trae, pues con la bolsa que él tenía. Yo bajo, yo bajo no, entro, verdad, porque es un único piso, cruzo al otro lado y voy al cuarto. Vemos, verdad, la mercancía allí, la presentó el...el...Alicea en este caso. Siendo un caso menos grave yo como agente del orden público hice mi labor porque fue algo que yo vi. Le leí las advertencias. Le pregunté que si estaba trabajando. Me dijo que no. Recuerdo que también le pregunté pero y por qué entonces tienes la identificación de Policía. En ese momento pue él lo que dijo fue ["]soy un miserable, no debí haberlo hecho.["] Le pregunté además si tenía el arma de fuego. No portaba el arma de fuego.[22]

---

[20] Cabe señalar que, el Departamento de Seguridad Pública de Puerto Rico integra todos los componentes que administran la seguridad pública en la Isla, entre otros, el Negociado de la Policía.

[21] Véase, la Exposición de Motivos de la Ley Núm. 20-2017, Ley del Departamento de Seguridad Pública de Puerto Rico, según enmendada.

[22] Transcripción de Vista Administrativa, págs. 10-11.

Se colige de lo antes reseñado que, el día de los hechos, el recurrido estaba franco de servicio, cargaba su identificación del Negociado, sin portar su arma de reglamento. Cabe puntualizar que, la Orden General 600-618 sobre *Uso y Manejo de Armas de Reglamento* dispone que, los miembros de la uniformada que estén francos de servicio deben portar su arma de reglamento, en todo momento, en una vaqueta oculta a la vista de las personas. De modo que, el testimonio de la agente Rodríguez Rosado estableció inequívocamente que Feliciano Gotay desobedeció la Orden General 600-618 por no portar su arma de reglamento el día de los hechos. Al así actuar, incurrió en la falta número 18 que se le imputa.

Según la normativa expuesta, la falta número 27 conlleva la expulsión de aquellos miembros de la uniformada que se hayan apropiado ilegalmente de los bienes de otros. En el presente caso, la mayor prueba de que los bienes que hurtó Feliciano Gotay eran propiedad de Walmart es que, como parte del acuerdo para el sobreseimiento de su causa penal, él restituyó a Walmart el valor de tales bienes. Lo antes surge del testimonio de la agente Rodríguez Rosado durante la vista administrativa.[23] De igual manera, lo anterior se colige de la *Moción de Consignación* la cual establece que:

1. Se consigna la cantidad de $80.83 en calidad de restitución en beneficio de Walmart.
2. Esta consignación fue acordad[a] como requisito para decretar el sobreseimiento del caso al amparo de la Regla 246.

Análogamente, la pertenencia de los bienes hurtados se desprende de la *Denuncia*:

> [...] MIGUEL A. FELICIANO GOTAY, allá en o para el 19 de [o]ctubre del 2018 [...] ilegal, voluntaria, maliciosa y criminalmente se apropió sin violencia, ni intimidación de artículos (4 CARRITOS DE JUGUETES Y UN[A] (1) PELICULA DVD DE BARBIE), todo esto valorado en ($90.13) perteneciente a la TIENDA WALMART SUPERCENTER, Caguas y salir fuera [de] la tienda sin pagar dicha mercancía. [...]

Por último, el *Informe de Incidente* expone en lo pertinente que "[s]e denuncia al Sr. Miguel Feliciano Gotay porque en el día y hora

---

[23] Transcripción de Vista Administrativa, pág. 11.

antes indicado se apropió de la mercancía descrita en la tabla de bienes perteneciente a la tienda Walmart Supercenter de Caguas. [...]"

Corolario de lo anterior, concluimos que el Negociado sustentó mediante prueba fehaciente que los bienes que hurtó Feliciano Gotay pertenecían a Walmart Supercenter de Caguas. El testimonio de Alicea Avilés, como representante de dicha entidad, no era indispensable para demostrar tal hecho. De este modo, el Negociado evidenció que Feliciano Gotay incurrió en la falta número 27.

Precisamos que, el Artículo 14 del Reglamento Núm. 9001 claramente dispone que, la radicación y el progreso de los cargos criminales no incide sobre la determinación de si un miembro de la Policía incurrió o no en la falta número 31. Lo antes, debido a que "basta que la investigación administrativa refleje que el querellado incurrió en una conducta tipificada, como delito grave o menos grave que implique depravación moral." Similarmente, incurre en la falta número 29 un miembro de la uniformada cuya conducta sea lesiva, inmoral o desordenada, en menoscabo del Cuerpo de la Policía.

Al analizar las faltas número 29 y 31 conjuntamente a los hechos objeto de la *Denuncia* presentada en contra de Feliciano Gotay, concluimos que, la conducta del recurrido es claramente constitutiva de un delito menos grave que implica depravación moral. Un agente del orden público quien, valiéndose de su identificación como policía para proyectar una imagen de integridad y seguridad, hurtó propiedad perteneciente a las empresas Walmart actuó indudablemente de forma inmoral, desordenada y lesiva en contra del buen nombre de la Policía de Puerto Rico. Esta conducta, además de ser repudiable y contraria a la misión del Departamento de Seguridad Pública de prevenir la actividad delictiva y proteger la seguridad pública, es, sin lugar a duda, constitutiva de las faltas número 29 y 31. Valga enfatizar que, el hecho de que el cargo criminal en contra de Feliciano Gotay fue archivado -a raíz de la restitución del valor de la mercancía hurtada- no implica que el

Negociado se vea impedido de proseguir con el procedimiento administrativo disciplinario en contra del recurrido.

Luego de un estudio sosegado de la prueba testifical y documental del Negociado, la cual Feliciano Gotay no rebatió, constatamos que los hechos que dieron lugar a la *Denuncia* en contra del recurrido claramente son constitutivos de las faltas graves imputadas números 18, 27, 29 y 31 del Reglamento Núm. 9001, *supra.*

En virtud de las normas de deferencia judicial antes discutidas, analizaremos el dictamen de la CIPA a la luz de los criterios que expuso el Tribunal Supremo en *Torres Rivera v. Policía de PR,* supra. En primer lugar, y según lo antes detallado, quedó claramente establecido que el dictamen de la CIPA -aquí impugnado- no está basado en la evidencia que obra en el expediente ante sí. Además, al decidir como lo hizo, la CIPA no aplicó correctamente las disposiciones del Reglamento Núm. 9001, ni el quantum de prueba intermedio aplicable. Nos resulta desacertada la conclusión de la CIPA en cuanto a que el Negociado "no presentó la prueba, clara, robusta y convincente requerida para justificar el castigo al apelado."[24] Según discutimos, la prueba testifical y documental que presentó el Negociado cumplió con el referido estándar evidenciario, y demostró inequívocamente que Feliciano Gotay incurrió en las faltas imputadas. Sobre tales bases, la CIPA actuó de forma irrazonable, arbitraria e ilegal al dictaminar la insuficiencia de la prueba en contra del recurrido. Por los fundamentos expuestos, en la medida en que el dictamen de la CIPA no está sustentado en la evidencia que obra en el expediente, determinamos que la deferencia al referido dictamen, cede.

**IV.**

Por los fundamentos esbozados, revocamos la *Resolución* de la CIPA y reinstalamos la *Resolución Final* del Negociado, fechada el

---

[24] Apéndice, pág. 37.

29 de agosto de 2019, mediante la cual ordenó la expulsión de Feliciano Gotay del puesto que ocupaba en la Policía de Puerto Rico.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones